THE STATE OF KANSAS v. HUGO MAHN.

1. MURDER TRIAL; *Instruction Properly Refused.* In a criminal prosecution for murder in the first degree, the trial court refused to give to the jury the following instruction: "The jury are further instructed, that the fact alone by itself that the deceased was killed by defendant is not sufficient to establish a malicious intent." *Held,* That while in many cases the above instruction would be good law, in the present case, for reasons given in the opinion, the instruction would be misleading and erroneous, and therefore that the trial court did not err in refusing to give it.

2. INSTRUCTION, *When Properly Refused.* In such criminal prosecution, where the trial court gave ample instructions to the jury with regard to insanity and disease of the mind, without, however, mentioning any specific drug or liquor as a cause for the same, *held,* nevertheless, that the trial court did not err in refusing to give an instruction referring to morphine as a cause for such supposed insanity or disease of the mind.

3. ——— *No Error.* And further *held,* in such case, that the trial court did not err in refusing to give any instructions referring to insanity where such instructions were substantially given in other instructions.

4. INSTRUCTION, *Properly Modified*.   And where the defendant in a criminal case asked the court to instruct the jury that "in order to entitle the defendant to an acquittal, he is required only *to raise* a reasonable doubt as to his sanity," and the court modified the instruction and gave it as follows: "In order to entitle the defendant to an acquittal, he is required only, *by evidence, to establish* a reasonable doubt as to his sanity," *held*, that the court did not err.

### *Appeal from Atchison District Court.*

INFORMATION for murder in the first degree, charging *Hugo Mahn* with feloniously killing Charles H. Wells, in the county of Atchison, June 30, 1880. Trial at the November Term, 1880, of the district court, when the jury returned a verdict of guilty of murder in the first degree. Motions in arrest of judgment and for a new trial were overruled, and the defendant was sentenced in accordance with the verdict. *Mahn* appeals. The opinion states the facts.

*Frank E. Smith*, and *J. T. Allensworth*, for appellant.

*C. K. Wells*, county attorney, and *F. D. Mills*, for The State.

The opinion of the court was delivered by

VALENTINE, J.: This was a criminal prosecution for murder in the first degree. On the first day of November, 1880, Hugo Mahn having waived an examination for the offense of murder in the first degree, an information was duly filed against him in the district court of Atchison county, Kansas, and on the tenth day of November, 1880, he having pleaded not guilty, the case came on for trial in said district court, before a jury duly impanneled for that purpose, and on the 12th day of November the jury returned a verdict of guilty of murder in the first degree. Motions in arrest of judgment and for a new trial were duly filed, which motions were overruled, and the defendant was sentenced in accordance with the verdict, from which sentence and judgment he now appeals to this court.

The only grounds upon which the defendant asks for a re-

versal of the judgment of the court below are, that the court
erred in refusing to give certain instructions to the jury, and
in modifying two other instructions asked for by the defend-
ant, and then in giving those two instructions to the jury as
thus modified.

I. The first ground for error urged by the defendant is, that
the court below refused to give the following instruction:

"19. The jury are further instructed that the fact alone by
itself that deceased was killed by defendant, is not sufficient
to establish a malicious intent."

In many cases the above instruction would be good law;
but in the present case it would be misleading and erroneous.
In the present case, the fact of killing was not the only fact
that tended to show a malicious intent on the part of the de-
fendant. Several other facts also tended very strongly to
show the same thing. But even if the fact of killing had been
the only fact tending to show such a thing, it would still have
been sufficient, in the present case, for that purpose. Take
the fact of killing alone, and in the absence of the other facts
it alone apparently shows that the defendant killed the de-
ceased in cold blood, deliberately, intentionally, without the
slightest provocation, and by the deliberate use of a deadly
weapon. Such proof, in the absence of other proof, is cer-
tainly sufficient. And this view of the case is corroborated
by the other facts. The defendant lived with a prostitute.
The deceased took her out riding in a buggy, in the city of
Atchison. The defendant saw them; prepared himself; fol-
lowed them with a pistol in his hand; overtook them at a
place where they had stopped; caught hold of the buggy and
shot at the deceased two or three times, while the deceased
was in the buggy, holding the lines, and trying to get away
from the defendant; hit the deceased in the back, near one
side, with one of the shots, mortally wounding the deceased,
so that he died in a few days; and afterward, the defendant
said that he had done just what he aimed to do. Ample and
voluminous instructions were given by the court to the jury,
including everything in detail that was necessary to be given

to the jury. The court gave all necessary and proper instructions with regard to malice and malicious intent.

We think the instruction was rightly refused.

II. The next complaint made by the defendant is concerning the refusal of the court below to give the following instructions:

"22. The jury are further instructed that if they find from the evidence that for many months previous to the alleged homicide the defendant had habitually used morphine, and by reason thereof his mind had become diseased and impaired to such an extent that at the time of committing the act he was, by reason of such cause, unconscious that he was committing a crime, he is not guilty of any offense whatever.

"23. The jury are further instructed that if a man, by long-continued use of morphine, has brought on insanity, or so impaired and enfeebled his mind as to be incapable of distinguishing right from wrong, he is no longer responsible for crime."

It appeared from the evidence that the defendant used morphine to some extent. The court below gave the substance of the foregoing instructions in other instructions, except that it did not mention morphine. Indeed, the court charged the jury amply upon the subject of insanity, and of disease of the mind, whether produced from the excessive use of morphine or whisky, or from the excessive use of any other deleterious drug or liquor, or from any other cause whatever, except that the court did not mention in its other instructions any specific drug or liquor; but we do not think that it was necessary for the court to do so. The questions to be determined were not with reference to the causes of the defendant's supposed insanity, but were as follows: Was the defendant insane to any extent or degree? and if so, how far did his mental condition affect his legal responsibility? Upon these questions the court below charged the jury amply. Among the instructions given by the court upon this subject are the following:

"20. The jury are instructed that, to be a subject of punishment, an individual must be a moral agent—must have mind and capacity, must have reason and understanding

enough to enable him to judge of the nature and consequences of the act charged against him, that the act is wrong and criminal, and that the commission of it will properly and justly expose him to penalty. The law can give no precise definition of sanity or insanity; each is a question of fact, and the jury should be satisfied beyond a reasonable doubt, before convicting a man of a crime, that he was of sound mind at the time of the commission of the offense. If not so satisfied beyond a reasonable doubt, he should be acquitted.

"21. The jury are further instructed that, if upon the whole evidence they find that the defendant, at the time of committing the act, was not of sound mind, and was unconscious that he was committing a crime, they should acquit him."

"24. The fact of the soundness of mind at the time the act was committed is as much an essential ingredient of the crime of murder as the fact of killing, or of malice, or of any other fact or ingredient of murder, and should be made out in the same way, by the same party, and by evidence of the same kind and degree, and as conclusive in its character, as is required in making out any other fact, ingredient or element of murder."

"26. The jury are further instructed that the burden of proof in a criminal case is always upon the state, and never shifts from the state to the defendant; and the making out of a *prima facie* case against the defendant does not shift the burden of proof to the defendant. If a *prima facie* case is made out by the state against the defendant, in order to entitle the defendant to an acquittal he is required only, by evidence, to establish a reasonable doubt as to his sanity."

"31. If the jury cannot say beyond a reasonable doubt that the defendant was sane at the time of the commission of the alleged act, or cannot say whether at that time he was sane or insane, they are bound to acquit him."

"37. If from the whole evidence the jury believe that the defendant committed the act, but at the time of doing so was not of sound mind, and was really unconscious that he was committing a crime, he is not in law guilty of murder."

"44. That accused must have sufficient mental capacity to distinguish between right and wrong, as applied to the act he is about to commit, and to be conscious that the act is wrong, before he can be convicted of a crime."

"47. To convict a person of crime, he must have sufficient memory, intelligence, reason and will to enable him to dis-

tinguish between right and wrong in regard to the particular act about to be done, to know and understand that it will be wrong, and that he will deserve punishment by committing it."

"9. The defendant Hugo Mahn is entitled to every reasonable doubt, and neither a preponderance of the evidence nor any weight of preponderant evidence is sufficient for the purpose of conviction, unless it generates full belief of every material allegation in the information, to the exclusion of all reasonable doubt. For it is not enough that the evidence goes to show the guilt of the defendant, but the evidence must be inconsistent with every reasonable supposition of his innocence, or the jury will find the defendant not guilty."

The foregoing instructions were all reduced to writing, and asked to be given by the defendant's counsel. The court below gave all of them as asked, except instructions numbered 26 and 37, and these were slightly modified by the court, and then given in the form as above shown. Now as the court below gave all the foregoing instructions as they appear above, we do not think the court erred in refusing to give instructions numbered 22 and 23.

III. The defendant claims that the court below erred in refusing to give certain other instructions asked for by the defendant, and having reference to insanity. For reasons already stated, we do not think that the court below did so err. As before stated, we think the court below charged amply upon this subject. This is especially true, as the evidence in the case clearly did not prove insanity, and clearly did not tend even to raise a reasonable doubt upon that subject.

IV. The defendant also claims that the court below erred in modifying instruction numbered 26. The court struck out the words "to raise," as asked by the defendant, and inserted the words "by evidence to establish" in their place. The instruction as asked was that "in order to entitle the defendant to an acquittal, he is required only *to raise* a reasonable doubt as to his sanity." The instruction as given was that "in order to entitle the defendant to an acquittal he is required only, *by evidence, to establish* a reasonable doubt as to his sanity." We do not think that the court below erred by making the change.

We think the defendant was rightly convicted and sentenced, and that the court below did not commit any material error in any of the proceedings. The judgment of the court below will therefore be affirmed.

All the Justices concurring.