Green W. Hodge v. The State of Florida—Opinion of Court.

GREEN W. HODGE, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. An indictment will not be quashed because it does not give the dimensions of a wound; nor will an indictment in a capital case be quashed upon the ground that it charges that the accused on, etc., "with force and arms at," etc., "in and upon one M., feloniously, wilfully, of his malice aforethought, and from a premeditated design to effect the death of M.," upon the ground "that the indictment charges the accused with both murder at the common law and under the statute." The words "feloniously, wilfully, of his malice aforethought," may, if objectionable, be treated as surplusage.

2. A venireman stated that he had no bias against the accused, whereupon, counsel for the accused asked for reasonable time to procure witnesses to show the bias of the juror, but without stating how long it would require to procure such witnesses, their residence, or the facts to be proven by them: *Held*, That there was no error in refusing the request made by counsel for defendant.

3. An assignment of error which is so general and vague that the Appellate Court is in doubt as to what is meant by it, will not be considered.

4. It is not error for the Trial Judge to propound leading questions to witnesses of tender years, for the purpose of ascertaining whether or not the witnesses understand the obligations of an oath, and an objection to this mode of examination of the witnesses is frivolous.

5. Evidence was introduced to prove threats of the prisoner "to kill a man before sundown," on the day M. was killed: *Held*, to be a matter to be given such weight by the jury as they, under all the circumstances, think it entitled to.

6. Continuous threats made by the prisoner against the deceased, continuing for several months down to within three weeks of the homicide, were properly admitted in evidence.

7. An objection that the Court erred in overruling the objections put to F., is too vague, the questions and the objections thereto must be pointed out, otherwise they will not be considered by the Appellate Court.

8. A witness was asked his conclusions or understandings of the conduct and intention of the accused: *Held*, that the question was properly excluded; and that the witness should have been questioned as to the acts, etc., of the accused, leaving the jury to draw their conclusions therefrom as to his mental condition.

9. When a defendant brings himself within the rule in introducing evidence for the purpose of impeaching the credibility of a witness, it is error to exclude such evidence.

10. When witnesses for the defense were introduced, they were cautioned by the State Attorney to tell the truth, and nothing but the truth: *Held*, that the State Attorney had no authority to thus caution the witnesses, and that such remarks had a tendency to confuse witnesses, and to cast suspicion upon their evidence.

11. Upon the subject of insanity the Trial Judge charged the jury that: "When the defense of insanity is set up as an excuse for crime, burden of proof is upon the person alleging it, and he must prove it to the satisfaction of the jury beyond a reasonable doubt, otherwise the presumption of the sanity of the prisoner will remain in force:" *Held*, to be error. When the defense of insanity is relied upon, and evidence is introduced which tends to overthrow the presumption of sanity, if

upon the whole evidence the jury entertain a reasonable doubt of the sanity of the prisoner they must acquit, regardless of whether it be adduced by the prosecution or the defendant, and that the accused is not required to establish his insanity beyond a reasonable doubt. But the jury are not to acquit the prisoner upon any fanciful ground that though they believe he was sane at the time the act was committed, yet as there may be a rational doubt of such sanity, he is therefore entitled to an acquittal.

Writ of error to the Circuit Court for Marion County.

The facts of the case are stated in the opinion of the Court.

*Miller & Spencer* for Plaintiff in Error.

The *Attorney General* for Defendant in Error.

MITCHELL, J.: Writ of error to the Circuit Court of Marion County.

On the 15th. day of January, 1888, Hodge, the plaintiff in error, was convicted in the Circuit Court of Marion County, of murdering his brother-in-law, Jesse J. Marlow, by shooting. Motions were made for new trial and in arrest of judgment, which motions were overruled, the accused sentenced to the penitentiary for life, and the cause comes up before this Court upon writ of error.

The first error assigned is, that the Court refused to quash the indictment. One of the grounds urged for quashing the indictment was, that it did not give the dimensions of the wound which it is alleged killed Marlow, and the case of Keech vs. State, 15 Fla., 608, and 1 Bishop's Criminal Procedure, are cited as authorities to support this proposition. This objection is not well taken. In the Keech case, Judge Randall, for whom we have the highest respect,

in speaking for the Court, says: "The dimensions of the wound, if it be an incised wound, are required to be stated by most of the authorities." We cannot give our assent to this conclusion. Whilst saying that most of the authorities require such description of the wound, when it is an incised wound, no authorities are cited in support of the proposition, and upon examination of the subject we find that the converse of the proposition is true, and that the decision in the Keech case is in conflict with the great current of authorities, and in fact we have not been able to find any late case that is not in conflict with the decision in that case. The dimensions of a wound are not required to be stated in the indictment in any case. Bishop's Criminal Procedure, Section 518 et seq., and cases there cited; Heard's Criminal Law, 682; Commonwealth vs. Woodward, 102 Mass., 159, and cases cited; Moore vs. State, 15 Texas Ct. App., 1; People vs. Stephenson, 9 Cal., 271; State vs. Conley, 39 Me., 78; Rex vs. Tomlinson, 6 Car. & P., 370; Dias vs. State, 7 Blackf. (Ind.), 20; Lazier vs. Commonwealth, 10 Gratt., 708.

Another reason urged for quashing the indictment is, that it charges the accused with both murder at the common law and under the statute. The indictment charges, that the defendant on, etc., "with force and arms at," etc., "in and upon one Jesse J. Marlow, feloniously, wilfully, of his malice aforethought, and from a premeditated design to effect the death of the said Jesse J. Marlow," etc. The statutory offence is correctly charged in the indictment, and we can see no objection to it, but if the words objected to, "feloniously, wilfully, of his malice aforethought," are not necessarily implied in those defining murder under the statute they may, without the least prejudice to the accused, be treated as surplusage. But as before stated, we can see

no valid objection to the indictment upon the grounds urged by counsel for the accused, nor upon any other grounds. The conclusion we have come to in this respect is not in conflict with either the case of Bird vs. State, 18 Fla., 493, or that of Denham vs. State, 22 Fla., 664. The other grounds of the motion were properly overruled..

The third error assigned is, that the Court erred in overruling the challenge of the defendant to the veniremen, J. L. Miller, and L. Bryant. The venireman, Miller, stated that he had no bias against the accused, whereupon counsel asked for reasonable time to procure witnesses to show the bias of the juror, but without stating how long it would require to procure such witnesses, their residence, or the facts to be proved by them, thus showing an attempt to delay the trial of the cause without giving sufficient reasons therefor. The objection to the venireman, Bryant, was, that he was summoned by Fergerson, a State witness, but the objection was not well taken, because each of the jurors summoned by Fergerson, stated on oath that Fergerson had not spoken to them about the case of the State vs. Hodge, and the list of jurors summoned by Fergerson was furnished him by the Sheriff, thus leaving no discretion to Fergerson whereby he could summon jurors prejudiced against the accused. The objection, under the circumstances, was frivolous.

The fourth error assigned is, that the Court erred in admitting the testimony of Dr. S. H. Blitch, but as to how the Court erred the record does not show, only that the indictment did not give the dimensions of the wound.

The fifth error assigned is, that the Court erred in admitting the testimony of each of the other State witnesses, which is shown as objected to by the defendant. This objection is to general ; it may apply to all or any two of the

witnesses, leaving it for the Court to learn as best it can from the very voluminous and imperfect record before it, as to what evidence was admitted over the objection of the prisoner.

The sixth error assigned is, that the Court erred in asking leading questions of the witnesses, Francis Johnson and Enoch James, and in holding that they were competent to testify. This objection was not well taken. The record shows that both these witnesses were of tender years, and that the questions propounded to them by the Court were for the purpose of ascertaining whether or not they understood the obligations of an oath, and their answers to the questions thus propounded to them showing that they each understood such obligation, there was no error in declaring them competent and allowing them to testify. The objection to the mode of the examination of the witnesses, and to their being allowed to testify, was wholly frivolous.

The seventh error assigned is, that the Court erred in refusing to strike out the testimony of Enoch James as to the threats of Hodge. This witness, among other things' testified, that on the morning Marlow was killed he saw the defendant not far from where Marlow lived, and that Hodge said that he was going to kill a man before sundown ; he was cursing. "He did not call any name; he had his pistol ; he was waving it over his head." We can see no objection to this testimony. This was a matter for the jury, under all the circumstances, to give such weight as they saw proper.

The eighth error assigned is, that the Court erred in admitting the threats testified to by Elijah Fergerson, and in overruling certain questions of defendant's counsel, shown in the record, to said witness. There was no error in overruling the objection to the evidence of this witness. The

record shows that Marlow was killed June 3, 1888, and the witness states that he had several conversations with Hodge about Marlow in January and February, 1888, the conversations being about some money Hodge claimed Marlow owed him, and about family troubles between himself and Marlow. In January he threatened to kill him; that he heard Hodge say at his (witness') table in January that he would kill Marlow; could not tell how the conversation started, but thought by Hodge talking about his wife; that Hodge seemed to think that Marlow was trying to keep them apart, and that he went so far as to say he would kill the whole race of Marlows and Robinsons. Witness further stated: "Well, I think he said he was a good man to do with." The conversation took place in January, mostly at my house. "Me and him was working together sometimes; we would talk about it very frequently; yes, talking about killing Marlow, about his wife, and so on. Hodge was living with me in January. He thought the people, the Marlows, were interfering with his wife. I had a conversation with him in February, something of the same thing; it was about his wife. He made threats in February; he said if he didn't quit bothering him and his wife he would kill him. He said that Marlow was trying to keep his wife from going back to him. Jesse Marlow, yes, the deceased man. I heard Hodge express himself again when in Ocala. The time and circumstances, I think it was about the 11th day of May, 1888. John Lang, Hodge and myself were walking across the street here in Ocala. As we were coming across the street we saw Jesse Marlow and his wife Lhe had been up to see Hodge's wife and he says: There is that d——n rascal now, he has been up there interfering between me and my wife. If he has I will kill him.' * *" This evidence shows continuous threats made

by the accused against the deceased for several months down to within three weeks of Marlow's death, and it was properly admitted for the purpose of showing the animus of the accused at the time of the commission of the act. Such evidence is always allowed to go to the jury. Its weight is for their consideration. Dixon vs. State, 13 Fla., 631. The remainder of the eighth error assigned we will not consider, because it is so vague and general that the entire evidence of the witness would have to be looked to and examined to determine what is meant by this part of the assignment. If attorneys have errors they rely upon they should point them out specifically; otherwise they will not be considered here.

The ninth error assigned is, that "the Court erred in overruling defendant's objection to the questions put to said Fergerson." What questions does this assignment refer to? If they are in the record the Court is required to hunt them up, instead of the attorneys pointing them out. They, if they exist, will not be considered. These observations apply also to the tenth error assigned.

The eleventh error assigned is, that the Court erred in sustaining the objections of the State Attorney to the evidence of the witness Freymouth, and in refusing to allow the questions asked him by the attorneys for the defense to be answered. This witness was asked his conclusions or understandings of the conduct and intentions of the accused, instead of being questioned as to his acts, etc., leaving the jury to draw therefrom their conclusions as to his mental condition. The evidence was properly excluded. Dixon vs. State, 13 Fla., 636.

The twelfth error assigned is, that "the Court erred in allowing the State Attorney to interrupt the witnesses Freymouth and Stephens, and to examine him as to his means of knowledge of the reputation of John Q. A. Lang."

We cannot tell from this language as to which of the witnesses it applies, but it makes no difference.   The examination was rather out of line in such cases, but it was only for the purpose of testing the knowledge of the witness or witnesses before he or they were allowed to testify, and the accused was not injured by the examination as it was conducted.

The thirteenth error assigned is, that the Court erred in refusing to permit Freymouth and Stephens to testify as to the reputation of John Q. A. Lang among his neighbors for truth and veracity.  The defendant brought himself within the rule in introducing evidence for the purpose of impeaching the credibility of Lang, and the Court erred in excluding the evidence so offered for that purpose.

The fourteenth error assigned is, that the Court erred in permitting the State Attorney to make the remarks set up in the 25th exception.   The record shows that when witnesses were introduced for the defense the State Attorney cautioned them to tell the truth, and nothing but the truth. The law confers no such authority upon a State Attorney, and such remarks are calculated to confuse witnesses and to cast suspicion on their evidence.

The fifteenth error assigned is, that the Court erred in overruling the defendant's objections to the question asked by the State Attorney of J. J. Hodge.   This is too general; the questions should have been pointed out; and the same applies to the sixteenth assignment.

The nineteenth assignment is, that the Court erred in its general charge to the jury, in giving the several charges then and there excepted to, as shown by the record.   The Trial Judge charged the jury upon the question of insanity as follows :  "As insanity is set up in the prisoner's defense, it is proper that I should instruct you as to the law on that

subject, and I charge you that it is the law that every man is presumed to be sane, and to possess a sufficient degree of reason to be responsible for his crimes, until the contrary shall be proved to the satisfaction of the jury; and to establish the defense of insanity, it must be proved that at the time of committing the act, the prisoner was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing, or as not to know what he was doing was wrong ; the proof of insanity devolves upon the prisoner ; in other words, when the defense of insanity is set up as an excuse for crime, burden of proof is upon the person alleging it, and he must prove it to the satisfaction of the jury beyond a reasonable doubt, otherwise the presumption of the sanity of the prisoner will remain in force."

"I further charge you that if you are satisfied from the evidence that at the time of killing of Jesse J. Marlow the defendant was laboring under such a defect of reason, from disease of the mind as not to know the nature and quality of the act he was doing and as not to know what he was doing was wrong, then you must acquit him; and if you are satisfied from the evidence, beyond a reasonable doubt, that at the time of the killing he was not laboring under such a defect of reason, from disease of mind, as prevented him from knowing the nature and quality of the act he was doing when he killed the deceased, and as prevented him from knowing that what he was doing was wrong at the time of the killing, and if you are satisfied from the evidence that he did kill the deceased from a premeditated design to effect the death of the deceased, then you must find him guilty. And the Court charges you that you must look to all the evidence in the case relating to alleged insanity of the prisoner in order to arrive at a safe and just conclusion in

regard to the question of his insanity at the time of the killing, and if you are satisfied beyond a reasonable doubt that the prisoner was insane at the time of the killing, you must acquit him."

This part of the charge was duly excepted to, and counsel for the plaintiff in error contend that it was erroneous, and cite following authorities in support of the proposition : Hopps vs. People, 31 Ill., 385; Chase vs. People, 40 Ill., 352; Polk vs. State, 19 Ind., 170; Stevens vs. State, 31 Ind., 485; Greenley vs. State, 60 Ind., 141; Gueting vs. State, 66 Ind., 94; State vs. Reddick, 7 Kan., 144; State vs. Mahn, 25 Kan., 182; People vs. Garbutt, 17 Mich., 9; Cunningham vs. State, 56 Miss., 269; Newcomb vs. State, 37 Miss., 383 ; Russell vs. State, 53 Miss., 367 ; Wright vs. People, 4 Neb., 409; Haws vs. People, 11 Neb., 537 ; State vs. Bartlett, 43 N. H., 224 ; State vs. Jones, 50 N. H , 369; State vs. Pike, 49 N. H., 399.

All the Courts hold that the legal presumption is that every man is sane until the contrary is proved, but they differ as to whether this presumption is to be rebutted by evidence showing beyond a reasonable doubt that the prisoner was insane at the time the act was committed, or whether a preponderance of the evidence is required, or whether the burden is not shifted from the prisoner to the State, whenever there is evidence introduced tending to establish the insanity of the prisoner. .

The rule of evidence contended for in behalf of the accused, is, that when the defense of insanity is relied upon, and evidence is introduced which tends to overthrow the presumption of sanity, if upon the whole evidence the jury entertain a reasonable doubt of his sanity they must acquit, regardless of whether it be adduced by the prosecution or the defendant, and that the accused is not required to estab-

lish his insanity beyond a reasonable doubt; and in this we think they are correct, and the charge of the trial Judge, that the accused was required to prove his insanity beyond a reasonable doubt, was erroneous. In addition to the authorities cited upon this subject by the plaintiff in error, see also Wagner vs. People, 2 Keys (N. Y.), 684; State vs. Crawford, 11 Kan., 32; Boswell vs. Commonwealth, 20 Grattan, 860; State vs. Marler, 2 Ala., 43; People vs. McCann, 16 N. Y., 58; State vs. Felter, 32 Iowa, 49; Myers vs. Commonwealth, 83 Pa. St., 131; State vs. Smith, 53 Mo., 267; People vs. McDonell, 47 Cal., 134; O'Connell vs. State, 87 N. Y., 377; Dacey vs. People, 116 Ill., 555. Contra: Authorities cited by the Attorney-General, Regina vs. Stokes, 3 Carrington & Kirwin, 188; State vs. Stark, 1 Strobhart, 479; State vs. Huting, 21 Mo., 476-7; People vs. Myers, 20 Cal., 518; State vs. Spencer, 1 Zabriskie, 202.

The subject of insanity has given the Courts much trouble. It is a subject upon which scientific experts, men who have made the subject a life-time study, differ widely in the conclusions they arrive at from the actions of persons as to whether they are sane or insane. One set of such experts, after hearing all the evidence in a case, will give it as their opinion that a certain person is insane, whilst another set of equal respectability and skill will give it as their opinion that the person is sane. To require the defense of insanity to be proved beyond a reasonable doubt, is to require an impossibility, and hence the more humane and advanced rule on the subject, that if the jury, upon a consideration of the whole evidence, have a reasonable doubt as to the insanity of a man charged with crime, at the time of the act, it is their duty to give him the benefit of such doubt, and to acquit him; but the jury are not to acquit him upon any fanciful ground that though they believe he was sane at the

time the act was committed, yet as there may be a rationa.
doubt of such sanity, he is therefore entitled to an acquittall
Boswell vs. Commonwealth, 20 Grattan, 860.

The other charges of the Court were substantially correct.

The judgment of the Court below is reversed, and the
cause is remanded for further proceedings not inconsistent
with this opinion.