677 So.2d 1363 (1996)
Derrick DWIGHT, Appellant,
v.
STATE of Florida, Appellee.
No. 95-2099.
District Court of Appeal of Florida, First District.
August 14, 1996.
*1364 Nancy A. Daniels, Public Defender, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General; Daniel A. David, Assistant Attorney General, Tallahassee, for Appellee.
LAWRENCE, Judge.
We have for review the first-degree murder conviction and sentence of Derrick Dwight (Dwight), imposed after a bench trial. Dwight argues that the evidence of his sanity was competent but not substantial, and that his departure sentence for the use of a firearm in the commission of a felony must be reversed for failure to give reasons.[1] We affirm Dwight's convictions and his life sentence for murder, including a twenty-five year mandatory minimum term; we reverse his fifteen-year concurrent sentence for the use of a firearm, and remand for imposition of a guidelines sentence.
Dwight thrice shotgunned a friend on August 20, 1993, in Tallahassee. Dwight, suffering from mental illness, erroneously believed that his friend, along with another man, had raped him. Dwight remained at Florida State Hospital until July 27, 1994.
The State's expert testified at the May 1995 trial that Dwight was legally sane at the time of the killing. The Florida Supreme Court tells us:
[A]n appellate court should not retry a case or reweigh conflicting evidence submitted to a jury or other trier of fact. Rather, the concern on appeal must be whether, after all conflicts in the evidence and all reasonable inferences therefrom have been resolved in favor of the verdict on appeal, there is substantial, competent evidence to support the verdict and judgment.
Tibbs v. State, 397 So.2d 1120, 1123 (Fla. 1981) (footnote omitted) (emphasis added), aff'd, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). The Florida Supreme Court also tells us:

*1365 The legal test of insanity in Florida, for criminal purposes, has long been the so-called "M'Naghten Rule." Under the M'Naghten Rule an accused is not criminally responsible if, at the time of the alleged crime, the defendant was by reason of mental infirmity, disease, or defect unable to understand the nature and quality of his act or its consequences or was incapable of distinguishing right from wrong.
In light of the requirements of the M'Naghten Rule any expert testimony ... to be relevant, must concern whether [the defendant] (1) was incapable of distinguishing right from wrong (2) as a result of a mental infirmity, disease, or defect. Both of these aspects of the insanity defense must be addressed. Expert testimony that a defendant suffered from a mental infirmity, disease, or defect without concluding that, as a result, the defendant could not distinguish right from wrong is irrelevant.
Hall v. State, 568 So.2d 882, 885 (Fla.1990) (emphasis added) (citations and footnote omitted). The trial judge's finding that Dwight was capable of distinguishing right from wrong at the time of the murder is supported by substantial, competent evidence.
The evidence includes the following. Psychologist McClaren opined "there's no doubt in my mind that [Dwight] knew what he was doing in the sense of shooting a human being to death with a shotgun, a pump shotgun that had to be manually operated." McClaren further opined "[Dwight] did have the capacity to understand the wrongfulness"; "he clearly knew that to kill the victim was wrong"; "[h]e told me that had a police officer been there at the time, he would not have shot [the victim]." McClaren moreover testified on cross-examination:
Q: [A]re you saying today that [Dwight] did not suffer from paranoid schizophrenia to the extent that he could not distinguish right from wrong?
A: No, I'm saying that he was most likely developing paranoid schizophrenia. I think that he could distinguish right from wrong.

What I'm saying is that the debate may be about, at least in my mind, may be the degree of the appreciation of the consequences. If the nature of the consequences mean I'm taking a pump shotgun to a person that I think has done me wrong, then I think he understood the consequences. If it is more global than that, that I am taking a pump shotgun to a human being who has done me no wrong and my thinking is all messed up and I understand that, I don't think he knew that.
Q: Okay. So, I think we all agree that he understood the immediate consequences of pointing a gun and pulling the trigger?
A: And, in my view at least, the wrongfulness of this.

(Emphasis added.)
Dwight nevertheless relies on three defense experts who unequivocally testified contrary to McClaren, while McClaren "swayed and fluttered." Psychiatrist Rucker testified: "There was no question in my mind that the day [Dwight] committed this tragedy he was unable to recognize what he was doing was wrong." Licensed clinical psychologist Brown opined that Dwight "did not realize that what he was doing was wrong." Psychiatrist Lartigue opined that Dwight "was insane at the time of [the murder]." The test however is not whether we would decide the sanity question differently sitting as the trier of fact, but whether competent substantial evidence supports the conclusion of the trier of fact. Tibbs. McClaren's testimony provides that evidence. We therefore must affirm Dwight's convictions.
Dwight also argues that his sentence for use of a firearm in the commission of a felony must be reversed. We agree. The trial judge sentenced Dwight to a departure sentence (fifteen years) for the use of a firearm in the commission of a felony, but gave no written reason for the departure. We therefore remand for the imposition of a guidelines sentence. Pope v. State, 561 So.2d 554 (Fla.1990).
We accordingly affirm Dwight's convictions, affirm his sentence for first-degree murder, reverse his sentence for the use of a *1366 firearm, and remand for the imposition of a guidelines sentence for the latter crime.
MINER and ALLEN, JJ., concur.
NOTES
[1] Dwight concedes that his argument that he cannot be convicted of both first-degree murder and the use of a firearm in the commission of a felony, based on a single incident, is foreclosed by State v. Martin, 602 So.2d 1263 (Fla.1992), cert. denied, 507 U.S. 976, 113 S.Ct. 1426, 122 L.Ed.2d 794 (1993).