994 So.2d 480 (2008)
James M. BROWN, Appellant,
v.
STATE of Florida, Appellee.
No. 1D07-2735.
District Court of Appeal of Florida, First District.
November 6, 2008.
Nancy A. Daniels, Public Defender, and M.J. Lord, Assistant Public Defender, Tallahassee, for Appellant.
Bill McCollum, Attorney General, and Edward C. Hill, Jr., Assistant Attorney General, Tallahassee, for Appellee.
BENTON, J.
James M. Brown alleges that the trial court erred by denying his motion to correct *481 sentencing error, filed pursuant to Rule 3.800(b), Florida Rules of Criminal Procedure. The motion contends that the trial judge sentenced him unlawfully by taking prior acquittals by reason of insanity into account. We affirm.
After Mr. Brown was convicted of robbery, the assistant state attorney sought a fifteen-year sentence, the maximum allowable under the statute, arguing that Mr. Brown was a dangerous person as evidenced by, among other things, the fact that he had killed his wife and daughter although, in 1985, a jury acquitted him of homicide charges by reason of insanity. The judge imposed a fifteen-year sentence, explicitly relying on the killings.[1]
As our supreme court has recently explained, Rule 3.800(b) is the vehicle for challenging substantive errors apparent in sentencing orders, but "not [just] any error in the sentencing process." Jackson v. State, 983 So.2d 562, 572 (Fla.2008). In Jackson, the supreme court held that "a claim of partial deprivation of counsel during a sentencing hearing is not a `sentencing error' as contemplated by rule 3.800(b)" because it is a claim of error in the sentencing process, not a claim that the sentencing order, the final product, is erroneous per se. Id. at 569, 574.
Similarly, in the present case, no error is apparent on the face of the sentencing order. Mr. Brown's claim that the court erred in considering his 1985 acquittals by reason of insanity alleges error in the sentencing process, not that the alleged procedural error is apparent on the face of the order. The error Mr. Brown posits lay in the reasoning of the judge, which she articulated on the record, without drawing any contemporaneous objection by defense counsel. He does not allege that the putative procedural error resulted in an erroneous sentencing order of the kind contemplated by Jackson. Only if the asserted error were fundamental, therefore, would it be cognizable on appeal. See Jackson, 983 So.2d at 574.
Mr. Brown argues on appeal, as below, that the trial judge violated his due process rights by considering conduct for which the jury decided he was not criminally responsible. See Bucknor v. State, 965 So.2d 1200, 1203 (Fla. 4th DCA 2007) ("Florida case law does indeed hold that a trial judge may not rely upon conduct for which the defendant has been acquitted in imposing sentence and that to do so is a violation of the defendant's due process rights." (footnote and citations omitted)). He concedes the general rule prohibiting review of a sentence that falls within statutory parameters, but argues that an exception applies here. See Evans v. State, 816 So.2d 742, 743-44 (Fla. 4th DCA 2002) ("As this court has recently recognized, *482 `the general rule in Florida is that when a sentence is within statutory limits, it is not subject to review by an appellate court.' An exception is made, however, where the defendant's constitutional rights are violated in the imposition of sentence. And, ... it is a violation of a defendant's due process rights for the court to rely upon conduct for which the defendant has actually been acquitted in imposing sentence." (internal citations omitted)).
We reject the argument. Not only was considering the acquittals by reason of insanity not fundamental error, it was not error at all. Acquittal by reason of insanity imports a finding that the conduct with which the defendant was charged actually occurred.[2]
It is an affirmative defense to a criminal prosecution that, at the time of the commission of the acts constituting the offense, the defendant was insane. Insanity is established when:
(a) The defendant had a mental infirmity, disease, or defect; and
(b) Because of this condition, the defendant:
1. Did not know what he or she was doing or its consequences; or
2. Although the defendant knew what he or she was doing and its consequences, the defendant did not know that what he or she was doing was wrong.
. . .
§ 775.027(1), Fla. Stat. (2006) (emphasis added). See also Fla. Std. Jury Instr. (Crim.) 3.6(a) (2007) ("If you find that (defendant) committed the crime but you find by clear and convincing evidence that the defendant was insane, then you should find [him][her] not guilty by reason of insanity."). See generally, e.g., Dwight v. State, 677 So.2d 1363, 1365 (Fla. 1st DCA 1996).
"[A] trial court has great discretion in determining the length of a sentence, so long as it is within the statutory limits." Mora v. State, 964 So.2d 881, 884 (Fla. 3d DCA 2007) (citing § 921.002(1)(g), Fla. Stat. (2006)). In providing for the possibility of civil commitment, moreover, *483 the Legislature has codified the commonsense view that a defendant found not guilty by reason of insanity may nevertheless pose a danger to society. See § 916.15(2), Fla. Stat. (2006) ("A defendant who is acquitted of criminal charges because of a finding of not guilty by reason of insanity may be involuntarily committed pursuant to such finding if the defendant has a mental illness and, because of the illness, is manifestly dangerous to himself or herself or others.").
Affirmed.
BROWNING, C.J., and WOLF, J., concur.
NOTES
[1] The trial judge explained her rationale as follows:

... I just feel that you present a high danger  risk of danger to the community....
And it is based on actions, not on words.... You were found not guilty by reason of insanity, because that's what it's called if you were insane at the time. It doesn't mean you didn't do it, it means you didn't have the intent required under the law to be held accountable in a normal criminal fashion in prison. Rather it required treatment. And you got that treatment for quite a few years. You were released. And if that was the end of the story, that would be great....
The problem here is that a robbery is a threat of violence. It's at least a threat of violence. And here, it was very bold, you go into a bank, tell them you had a gun, give me the money....
But what concerns me is that you knew what you were going  you had a reason to do it and it was impulsive and it was  it did involve the threat of force and personal confrontation with other people. And that is like a huge red flag for me, given your history....
[2] We have said:

In a Florida criminal proceeding, acquittal by reason of insanity is appropriate, even though the criminal defendant intended the act charged, if reasonable doubt exists either as to his mental ability to have distinguished between right and wrong at the time, or as to whether "the defendant was by reason of mental infirmity, disease, or defect unable to understand the nature and quality of his act or its consequences," Hall v. State, 568 So.2d 882, 885 (Fla. 1990); Campbell v. State, 227 So.2d 873 (Fla.1969), cert. denied, 400 U.S. 801, 91 S.Ct. 7, 27 L.Ed.2d 33 (1970) (challenge to Florida's adherence to rule in M'Naghten's case rejected); Hodge v. State, 26 Fla. 11, 7 So. 593 (1890) (standard is reasonable doubt), and acted for that reason. While it has been said that "in order to constitute the crime of murder, the slayer must have a responsible and sane mind," Davis v. State, 44 Fla. 32, 50, 32 So. 822, 827 (1902), the same early opinion approved the narrower formulation in the following jury instruction:
The true test of criminal responsibility, when the defense of insanity is interposed, is whether the accused had sufficient use of his reason to understand the nature and consequences of the act with which he is charged, and to understand that it was wrong for him to commit it; that, if this was the fact, he was criminally responsible for it, whatever peculiarity may be shown about him in other respects. Whereas, if his reason was so defective, in consequence of mental disorder, that he could not understand what he was doing, or that what he was doing was wrong, he ought to be treated as an irresponsible person, and acquitted.
Congleton v. Sansom, 664 So.2d 276, 282 (Fla. 1st DCA 1995). An "irresponsible person" can pose a danger to the community even if not criminally culpable.