622 So.2d 984 (1993)
John ALLRED, Petitioner,
v.
STATE of Florida, Respondent. Richard DiAndrea, II, Petitioner,
v.
State of Florida, Respondent.
Nos. 80532, 80475.
Supreme Court of Florida.
July 1, 1993.
Rehearing Denied September 2, 1993.
*985 Douglas Duncan of Roth, Duncan & Labarga, P.A., West Palm Beach, for petitioner.
Robert A. Butterworth, Atty. Gen. and Joan Fowler, Asst. Atty. Gen., West Palm Beach, and David H. Bludworth, State Atty. and Robert S. Jaegers, Asst. State Atty., West Palm Beach, for respondent.
SHAW, Justice.
We review State v. Allred, 602 So.2d 1326, 1326 (Fla. 4th DCA 1992); and State v. DiAndrea, 602 So.2d 1322, 1325-26 (Fla. 4th DCA 1992), in which the district court certified the following question as one of great public importance:
IS A POLICE OFFICER'S REQUEST OF AN INDIVIDUAL ARRESTED FOR DRIVING UNDER THE INFLUENCE TO RECITE THE ALPHABET FROM "C TO W" A TESTIMONIAL RESPONSE WITHIN THE PRIVILEGE AND PROTECTIONS OF THE FIFTH AMENDMENT?
We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer the question in the affirmative.
John Allred (Allred) was stopped for a driving infraction.[1] He was not advised of his Miranda[2] rights before being asked to recite the alphabet from "c" to "w" at the roadside, in the presence of three police officers; Allred instead recited from "e" to "w." Allred was asked to count from 1001 to 1030 at the police department after his arrest, as part of the one-legged stand test of sobriety. Allred counted from 1001 to 1021 correctly, but thereafter dropped the prefix 1000 before each number.
Richard DiAndrea, II, (DiAndrea) was stopped for a driving infraction and suspected DUI.[3] He was asked by the police officer at the roadside to recite the alphabet; he could not get past "p." After his arrest, he was asked at a videotaping facility to recite the alphabet from "c" to "w" during the one-legged stand test; he instead recited it from "c" to "z." DiAndrea also was asked to count from 1001 to 1030, which he did successfully.
The county court suppressed the results of Allred's alphabet and counting tests and *986 DiAndrea's alphabet test, relying on Pennsylvania v. Muniz, 496 U.S. 582, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990). The circuit court, in its appellate capacity, affirmed the suppressions. The Fourth District Court of Appeal reversed, holding that alphabet recitations[4] are not testimonial, relying on Contino v. State, 599 So.2d 728 (Fla.2d DCA 1992).
Muniz holds that compelling an arrested drunk-driving suspect to disclose the date of his sixth birthday is a "testimonial" response. Because Muniz was not read his Miranda rights before he was asked the sixth-birthday question, his Fifth Amendment privilege against self-incrimination was violated by admitting at trial an audiotape[5] of his response. The Supreme Court explained that "to be testimonial, an accused's communication must itself, explicitly or implicitly, relate a factual assertion or disclose information. Only then is a person compelled to be a `witness' against himself." Pennsylvania v. Muniz, 496 U.S. at 589, 110 S.Ct. at 2643 (quoting Doe v. United States, 487 U.S. 201, 210, 108 S.Ct. 2341, 2347, 101 L.Ed.2d 184 (1988)).[6] The Court observed that requiring a suspect to reveal the physical manner in which he articulates words, like requiring him to reveal the physical properties of the sound of his voice by reading a transcript, does not, without more, compel him to provide a testimonial response for purposes of the privilege. Muniz's response to the sixth-birthday question, by contrast, was incriminating not just because of his delivery, but also because the content of his answer supported an inference that his mental state was confused.[7]
Contino, decided after Muniz, holds that compelling a defendant to recite the alphabet as part of a sobriety test does not violate the Fifth Amendment. The Contino court reasoned that "recitation of the alphabet  something most people would do almost reflexively  is even less content-oriented than trying to figure a specific date... . Whereas one conceivably could be motivated to lie about his birthdate, the order of the alphabet is not susceptible to prevarication or alteration for ulterior motive." Id. at 729-30.[8]
We begin our analysis with the Florida Constitution's Declaration of Rights, consonant with the primacy principle explained in Traylor v. State, 596 So.2d 957 (Fla. 1992). Only if allegedly self-in-criminating statements pass muster under our state constitution need we examine them under federal law. Id. at 961. Article I, section 9 of the Florida Constitution provides: "Due Process.  No person shall be ... compelled in any criminal matter to be a witness against [one]self."
We held in Traylor that

*987 the Self-Incrimination Clause of Article I, Section 9, Florida Constitution, requires that prior to custodial interrogation in Florida suspects must be told that they have a right to remain silent, that anything they say will be used against them in court, that they have a right to a lawyer's help [the right to consult with a lawyer before being interrogated and to have the lawyer present during interrogation], and that if they cannot pay for a lawyer one will be appointed to help them.
Traylor, 596 So.2d at 966 & n. 13 (footnotes omitted). We also held that:
A person is in custody for Section 9 purposes if a reasonable person placed in the same position would believe that his or her freedom of action was curtailed to a degree associated with actual arrest.
Interrogation takes place for Section 9 purposes when a person is subjected to express questions, or other words or actions, by a state agent, that a reasonable person would conclude are designed to lead to an incriminating response.
Traylor, 596 So.2d at 966 nn. 16-17 (citations omitted). It is undisputed that petitioners here were in custody; they were under arrest. We find that petitioners were being interrogated within the meaning of Traylor when they were asked to recite, out of the ordinary sequence, the alphabet and numbers. A reasonable person would conclude that the request to recite, out of the ordinary sequence, letters and numbers was designed to lead to an incriminating response. We find moreover that the petitioners were denied their Florida constitutional protection against self-incrimination. Failure to accurately recite the alphabet "discloses information" beyond possible slurred speech; it is the content (incorrect recitation) of the speech that is being introduced, rather than merely the manner (slurring) of speech. We find however that routine booking questions[9] do not require Miranda warnings because they are not designed to lead to an incriminating response; rather, they are designed to lead to essential biographical data.[10]
The State nevertheless argues that Schmerber v. California, 384 U.S. 757, 761, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), controls and permits admission of the recitations. Schmerber holds that taking a blood sample from a suspected drunk driver over his objection does not violate the Fifth Amendment. The State says that because Schmerber permits the introduction of physical evidence and because the only significance of reciting the alphabet is the manner in which the recitation is made, rather than the content of the recitation, therefore, no violation exists. We disagree. If the recitation of the alphabet were admitted only to show slurred speech, we would agree that only physical evidence is involved. We cannot agree that the information disclosed in the instant cases however is mere physical information. The content is incriminating evidence out of the suspect's own mouth. The incriminating inference is drawn from the testimonial act  answering the question incorrectly, not from physical evidence  slurred speech.
We accordingly answer the certified question in the affirmative based on the Florida Constitution, disapprove Contino, quash the decisions of the district court, and remand for proceedings consistent with this opinion.
It is so ordered.
BARKETT, C.J., and OVERTON, KOGAN and HARDING, JJ., concur.
GRIMES, J., concurs with an opinion.
McDONALD, J., dissents.
GRIMES, Justice, concurring.
I would not construe the Florida Constitution more strictly than the United States *988 Constitution on this issue. However, as I read Pennsylvania v. Muniz, 496 U.S. 582, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990), the petitioners' responses should have been suppressed in the absence of prior Miranda warnings.
NOTES
[1] Allred was charged with a June 24, 1990 violation of section 316.193(1)(a), (b), Florida Statutes (1989).
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] DiAndrea was charged with an April 7, 1990 violation of section 316.193(1)(a), (b), Florida Statutes (1989).
[4] DiAndrea, at the suppression hearing, withdrew his motion to suppress his response to the counting test. State v. DiAndrea, 602 So.2d 1322, 1323 n. 1 (Fla. 4th DCA 1992). Allred, in his brief, "does not request this Court to exercise its discretionary authority to review the `counting' issue."
[5] His response was videotaped; the audio portion to the sixth-birthday question was held inadmissible.
[6] Doe v. United States holds that being compelled to sign a consent form waiving a privacy interest in foreign bank records does not violate one's Fifth Amendment privilege. Authorization communicates no factual assertions; if the government obtains bank records as a result of the authorization, the only factual assertions are the bank's. "Because the consent form spoke in the hypothetical and did not identify any particular banks, accounts, or private records, the form neither `communicate[d] any factual assertions, implicit or explicit, [n]or convey[ed] any information to the Government.'" Muniz, 496 U.S. at 598, 110 S.Ct. at 2649 (alteration in original) (quoting Doe, 487 U.S. at 215, 108 S.Ct. at 2350).
[7] The court declined to address the question whether the recitation or numbers during custodial interrogation was testimonial within the meaning of the privilege, because "as Muniz counted accurately ... his verbal response to this instruction [to count while doing the "one leg stand" test] was not incriminating except to the extent that it exhibited a tendency to slur words... ." Pennsylvania v. Muniz, 496 U.S. 582, 603 n. 17, 110 S.Ct. 2638, 2651 n. 17, 110 L.Ed.2d 528 (1990).
[8] Contino apparently was asked to recite the entire alphabet. "Despite three opportunities, she could not get past the letter `P.'" Contino v. State, 599 So.2d 728, 729 (Fla.2d DCA 1992).
[9] Name, address, height, weight, eye color, date of birth, and current age.
[10] The Muniz court also held that routine booking questions do not violate the constitutional protection against self-incrimination; they do not constitute interrogation. Muniz, 496 U.S. at 601, 110 S.Ct. at 2650.