Pamela HOURIGAN, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee,

and

Patrick WYLIE, et al., Appellants,

v.

COMMONWEALTH of Kentucky,
Appellee,

and

COMMONWEALTH of Kentucky,
Appellant,

v.

Ann MAGUIRE and Joycelynn
Marcum, Appellees.

Nos. 95–SC–870–DG, 95–SC–1101–
DG, 96–SC–00463–DG.

Supreme Court of Kentucky.

Jan. 22, 1998.

Fred E. Peters, Lexington, for Appellants Hourigan and Wylie, et al.

A.B. Chandler, III, Attorney General, Frankfort, David W. Mossbrook, First Assistant County Attorney, Cynthia T. Rieker, Assistant Fayette County Attorney, Lexington, for Appellant Commonwealth.

A.B. Chandler, III, Attorney General, Frankfort, Robert G. Layton, David W. Mossbrook, First Assistant County Attorney, Cynthia T. Rieker, Assistant Fayette County Attorney, Lexington, for Appellee Commonwealth..

Fred E. Peters, Lexington, for Appellees Maguire and Marcum.

STEPHENS, Chief Justice.

This case represents a consolidation of three separate cases dealing with various issues concerning driving under the influence [hereinafter "DUI"]. Ultimately, we granted discretionary review of these cases to determine two issues: (1) whether Section 11 of Kentucky's Constitution requires *Miranda* warnings to be given to a DUI suspect prior to the administration of field sobriety tests requiring verbal statements, and (2) whether the pre-arrest suspension of a driver's privileges constitutes "punishment", thus prohibiting the subsequent imposition of punishment for the conviction of a second offense on double jeopardy grounds. Because each of the three cases involve different facts and issues, a synopsis of each case is provided below.

### I. Hourigan

Appellant, Pamela Y. Hourigan, was driving in the early morning hours of January 24, 1992, in downtown Lexington when Officer Jeff Jacobs, a Lexington police officer who was on patrol, observed the car she was driving swerving and crossing the center line on various streets, including a one-way street (North Limestone). Officer Jacobs testified

at trial that he pulled the car over, approached the car, and asked for Hourigan's driver's license. He testified that when she rolled down the window, he detected the odor of an alcoholic beverage from inside the car. He also testified that Appellant's speech was slurred and as to specific aspects of her appearance which suggested intoxication.

Officer Jacobs testified that he gave Appellant three field sobriety tests, the alphabet recitation test, the counting backwards test, and the horizontal gaze nystagmus test. Appellant performed poorly on two of the three tests and advised Officer Jacobs that she could not perform the other. As a result of the tests, Officer Jacobs determined that she was under the influence of alcohol.

Consequently, Officer Jacobs placed Appellant under arrest. At her arraignment in Fayette District Court, Appellant's driver's license was suspended, pre-trial, on the grounds that she had a prior conviction for DUI and for refusing to take a chemical breathalyzer test. Appellant was convicted in Fayette District Court of Driving Under the Influence, second offense, and appealed her conviction to the Fayette Circuit Court which affirmed her conviction. During her initial trial, the trial judge directed that she be tried only as a first offender and subsequently granted a mistrial. The Commonwealth obtained a writ from the Fayette Circuit Court which directed the district court to allow the Commonwealth to proceed as a second offense. The writ was affirmed by the Kentucky Court of Appeals. Upon retrial, Hourigan was convicted of DUI, second offense, and her conviction was affirmed by the Fayette Circuit Court. This Court granted discretionary review following the Court of Appeals denial of discretionary review.

### II. Wylie, et al.

Wylie, et al, entered conditional guilty pleas in Fayette District Court to the charges of DUI, Second Offense. KRS 189A.010(4)(b). They appealed to Fayette Circuit Court alleging that the pretrial suspension of their licenses under KRS 189A.200(1) constituted "punishment" for the

crime of DUI, second offense, and thus barred their subsequent trial and punishment for that offense. Rejecting their argument, the Fayette Circuit Court affirmed movants' convictions for DUI, second offense. The Court of Appeals subsequently denied discretionary review and we granted discretionary review.

### III. Maguire, et al.

The facts in Maguire's case are almost identical to those presented in Hourigan's case. Maguire was also required to recite the alphabet and count backwards after she had been pulled over in a routine traffic stop. She entered a conditional guilty plea and appealed to the Fayette Circuit Court which reversed her conviction, determining that the questions asked during the traffic stop were in violation of *Miranda* as they were done while Maguire was "in custody."

Ultimately, the Court of Appeals affirmed the Fayette Circuit Court, in a 2–1 unpublished opinion, holding that *Miranda* warnings must be given to a DUI suspect prior to administration of field sobriety tests requiring verbal statements such as those in which the suspect is asked to count backwards or to recite a portion of the alphabet. The court premised its decision on Section 11 of the Kentucky Constitution and found as persuasive a similar holding by the Florida Supreme Court in *Allred v. State*, 622 So.2d 984 (Fla.1993). While the Commonwealth filed the motion seeking discretionary review, Marcum and Maguire agreed with this motion that discretionary review should be granted.

### IV. Double Jeopardy

■ Appellants assert that the Commonwealth's attempt to impose additional punishments upon them after previously imposing the punishment of pre-trial suspension of their driver's licenses is barred by the double jeopardy clauses of the Kentucky Constitution and the United States Constitution. Both the Fifth Amendment to the United States Constitution and Section 13 of the Kentucky Constitution state that no individual shall be twice put in jeopardy of life and limb for the same offense. These clauses protect a criminal defendant from three distinct abuses: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction,; and (3) multiple punishments for the same offense. *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). Both Hourigan and Wylie assert that they are being punished twice for the same DUI conviction.

■ In *Commonwealth v. Burge*, Ky., 947 S.W.2d 805 (1997), this Court recently returned to the analysis set forth in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), in determining double jeopardy and moved away from the idea of the "single impulse" test. See *Ingram v. Commonwealth*, Ky., 801 S.W.2d 321 (1990). Basically, we stated in *Burge* that under the new test, "[w]e are to determine whether the act or transaction complained of constitutes a violation of two distinct statutes, and if it does, if each statute requires proof of a fact the other does not ... Put differently, is one offense included within another?"

Moreover, in *Halper, supra,* the manager of a medical services provider company presented sixty-five false claims to Medicare which caused the government to overpay the provider by $585.00. The manager was convicted of sixty-five counts of filing false claims under 18 U.S.C. § 287 and was sentenced to two years imprisonment and a fine of $5,000. The government then filed suit against the manager under a civil false claims statute, 31 U.S.C. Sections 3729–3731, seeking fines of $2,000 per count, totaling $130,000. *Halper* at 437–48, 109 S.Ct. at 1895–96. The Court found the $130,000 penalty to constitute a second punishment as it was "a sanction overwhelmingly disproportionate to the damages" caused by the manager's filing of the false claims. The Court further determined that the penalty bore "no rational relation to the goal of compensating the government for its loss." Ultimately, the Court held that "under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only

as a deterrent or retribution" *Id.* at 448–49, 109 S.Ct. at 1902.

However, the *Halper* opinion was recently clarified by the United States Supreme Court in *United States v. Ursery*, 518 U.S. 267, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996). In *Ursery*, the Court held that civil forfeitures are neither punishment nor criminal for purposes of the double jeopardy clause. Specifically, the Court clarified that *Halper* was limited to the context of civil "penalties" and stated that it did not establish a general rule applicable to all civil sanctions. *Id.* at ——, 116 S.Ct. at 2145–46, 135 L.Ed.2d at 566. The Court stated that "[i]f the general rule . . . were applied literally, then virtually every sanction would be declared to be a punishment; it is hard to imagine a sanction that has no punitive aspect whatsoever." *Id.*

Moreover, in *Division of Driver Licensing v. Bergmann*, Ky., 740 S.W.2d 948 (1987), this Court upheld the due process procedures involved in revocation of driver's licenses. We asserted in *Bergmann* that because Kentucky does not automatically suspend a first time offender's license upon his failure of a blood alcohol test, its practices are lenient compared to many other states. *Id.*

In addition, this Court held in *Commonwealth v. Steiber*, Ky., 697 S.W.2d 135, 136 (1985), that, "[l]icense revocation is not a punishment but a cautionary measure to protect the safety of the public." Appellants assert that since *Halper, supra*, is a more recent case, perhaps this Court should reconsider its decision in *Steiber*. We disagree.

█ In the present cases, KRS 189A.010(1) prohibits operating a motor vehicle while the alcohol concentration in one's blood or breath is 0.10 or more, or while under the influence of alcohol. KRS 189A.200 requires pre-trial suspension of the motor vehicle operator's license of a person charged with a violation of KRS 189A.010 who has been convicted of one or more prior offenses within a five year period immediately preceding his arrest or who has refused to take an alcohol concentration test. The elements of the two statutes are so different that there cannot be any dispute that each offense contains elements not required by the other. Thus, the suspension of Appel-

lants' licenses, prior to trial, did not constitute punishment, per se, and consequently the double jeopardy clause does not apply to these cases.

### V. Miranda Warnings

Appellants, Hourigan and Maguire, also argue that unless *Miranda* warnings are given prior to asking a motorist during a roadside stop to recite the alphabet or to count numbers, the responses given are not admissible as evidence, as they are in contravention of the Fifth Amendment of the United States Constitution and Section 11 of Kentucky's Constitution. The issue of whether the Fifth Amendment of the United States Constitution requires *Miranda* warnings prior to administering roadside field sobriety tests following traffic stops has been ruled on twice by the United States Supreme Court in *Berkemer v. McCarty*, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), and *Pennsylvania v. Bruder*, 488 U.S. 9, 109 S.Ct. 205, 102 L.Ed.2d 172 (1988). In *Berkemer* the United States Supreme Court held that persons temporarily detained pursuant to ordinary traffic stops are not "in custody" for the purposes of *Miranda*. Specifically, the Court stated:

> Two features of an ordinary traffic stop mitigate the danger that a person questioned will be induced "to speak where he would not otherwise do so freely," *Miranda v. Arizona*, 384 U.S. [436], at 467, 86 S.Ct. [1602], at 1624[, 16 L.Ed.2d 694, 10 ALR3d 974 (1966)]. First, detention of a motorist pursuant to a traffic stop is presumptively temporary and brief. The vast majority of roadside detentions last only a few minutes . . .
>
> Second, circumstances associated with the typical traffic stop are not such that the motorist feels completely at the mercy of the police . . . Perhaps most importantly, the typical traffic stop is public, at least to some degree. . . .

*Berkemer* at 436–40, 104 S.Ct. at 3148–50.

The United States Supreme Court again addressed the issue in *Bruder, supra*, where it specifically held that administering field sobriety tests including recitation of the al-

phabet following a traffic stop does not involve custody for purposes of *Miranda*. Finally, in *Pennsylvania v. Muniz*, 496 U.S. 582, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990), the United States Supreme Court reaffirmed its previous decisions determining that field sobriety tests similar to those administered to appellant, are testimonial in nature and, consequently, the real issue is whether or not the accused was in custody as the field sobriety tests were completed before the arrest. *Muniz* also cites to *Berkemer, supra,* and *Bruder, supra,* as the leading authority for this issue and points out that in *Bruder,* the Court specifically held that administering field sobriety tests including recitation of the alphabet following a traffic stop does not involve custody for purposes of *Miranda*. *Id.* at 588, 110 S.Ct. at 2643.

Moreover, this Court recently reaffirmed in *Commonwealth v. Cooper*, Ky., 899 S.W.2d 75 (1995), its holding in *Newman v. Stinson*, Ky., 489 S.W.2d 826 (1972), that Section 11 of the Kentucky Constitution and the Fifth Amendment of the United States Constitution are coextensive and provide identical protection against self-incrimination.

Finally, Appellants rely on *Allred v. Florida*, 622 So.2d 984 (Fla.1993), *State v. Evans*, 692 So.2d 305 (Fla.App. 4 Dist.1997), and *State v. Taylor*, 648 So.2d 701 (Fla.1995), three cases from Florida, to support their contention that *Miranda* warnings should have been given prior to requiring them to give verbal responses to field sobriety tests. However, *Allred* is distinguishable from the present case in that it involved a certification of the law and specifically addressed an *arrested* individual.

Similarly, neither *Evans, supra,* nor *Taylor, supra,* apply to the present case. In *Evans,* the officer who arrested Evans took the defendant to a nearby gas station to perform the field sobriety tests. *Id.* at 306. Clearly, Evans was in "custody" for *Miranda* purposes in that situation, and the Florida District Court so held. *Id.* at 307. Moreover, *Taylor* also involved a certification question in which the defendant refused to take a pre-arrest field sobriety test. The Florida Supreme Court held that a DUI suspect's refusal to submit to pre-arrest field

sobriety tests was admissible as evidence in the case against him.

■ By applying the test in *Bruder* to the present case, Appellants would not be considered to have been in custody at the time the police officer administered the three field sobriety tests. Appellants were required to perform the tests in view of the public on the city streets of Lexington. Consequently, this questioning was quite different from that performed at the stationhouse, as was the case in *Miranda, supra*. Because Appellants were not in custody, they were not entitled to be given *Miranda* warnings.

For the aforementioned reasons, we affirm the decision of the Fayette Circuit Court with regard to the Hourigan case (95–SC–870–DG) on both the Double Jeopardy and *Miranda* issues and the Wylie, et al. case (95–SC–1101–DG) involving simply the Double Jeopardy issue. Furthermore, the decision of the Fayette Circuit Court and the Court of Appeals in the Maguire case (96–SC–000463–DG) is reversed.

All concur.

JOHNSTONE, J., not sitting in 95–SC–1101–DG.