965 So.2d 1200 (2007)
Michael BUCKNOR, Appellant,
v.
STATE of Florida, Appellee.
No. 4D06-2367.
District Court of Appeal of Florida, Fourth District.
September 19, 2007.
Rehearing Denied October 29, 2007.
*1201 Carey Haughwout, Public Defender, and Tatjana Ostapoff, Assistant Public Defender, West Palm Beach, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Don M. Rogers, Assistant Attorney General, West Palm Beach, for appellee.
STEVENSON, J.
Michael Bucknor was tried by jury and convicted of robbery and assault, lesser included offenses of the charged robbery with a firearm and aggravated assault with a firearm, and thereafter sentenced to thirty years incarceration as a habitual felony offender. Bucknor has appealed, challenging the denial of his motion to suppress statements he made during booking, the denial of his request for a continuance, and the sentence imposed. We affirm both the convictions and sentences and write only to address the issues concerning the motion to suppress and sentence.
The Evidence at Trial
During the early evening hours of April 15, 2005, Jamil Aljallad placed several cases of crab meat in the trunk of his Mercedes, left the restaurant where he was employed, and drove towards the home of Robert Dubey. While driving to Dubey's home, Aljallad noticed a white Crown Victoria following him; he could not see how many people were in the car. Aljallad pulled into Dubey's driveway and, as he began to tell Dubey about the car, two black males approached. Each had a gun. According to Aljallad, the assailants told himself and Dubey to "freeze" and to "get on the ground." Aljallad testified Bucknor focused his attention on him and took his wallet, keys and watch. Aljallad attempted to back away, but was tackled and had a gun put to his head. Morris was identified as the assailant giving orders to Dubey. The assailants wanted Aljallad and Dubey to get in the car, but they refused. Thereafter, the assailants fled.
Police arrived within minutes. There was a high-speed chase between police and the white Crown Victoria. Ultimately, the Crown Victoria crashed and three men fled the car. A minute or so after the crash, police observed Bucknor. He was not wearing the clothes described by Aljallad and Dubey. Police later discovered Hudson and Morris hiding in a home. Aljallad and Dubey identified Morris as one of the assailants during a show-up, but were unable to identify Hudson. Aljallad and Dubey also identified Bucknor as one of the assailants, but thereafter indicated they had made a mistake.
Hudson testified at trial, stating that he, Morris, and Bucknor were driving around on April 15, 2005, that Morris instructed him to follow a gray car because he was going to rob it, that he complied and followed the car until it stopped, and that Bucknor and Morris then got out of the car. Hudson denied seeing any guns. When the pair returned to the car, Morris instructed him to "hit it." Hudson acknowledged being chased by police, the crash, and hiding in the home until being removed by a SWAT team.
The Motion to Suppress
Police found Aljallad's watch, wallet, and two cell phones in the getaway car. To tie Bucknor to the crimes, the State sought to introduce evidence that calls were made from one of these cell phones to the number Bucknor gave as a contact *1202 number during the booking process. Bucknor sought to suppress the evidence on the ground that he provided the contact number in the absence of Miranda warnings. The trial court denied the motion to suppress. We affirm.
A defendant's statements to police are inadmissible if made in the absence of Miranda warnings and if made in a custodial circumstance and in response to questioning or interrogation by police. See Ramirez v. State, 739 So.2d 568, 573 (Fla. 1999). The courts have, however, carved out a "booking exception" to Miranda. In Pennsylvania v. Muniz, 496 U.S. 582, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990), during the booking process, police asked a DUI suspect questions concerning his name, address, height, weight, eye color, date of birth, and age. The questions were posed in the absence of Miranda warnings. One of the issues before the Court was whether the absence of Miranda warnings rendered the defendant's responses inadmissible. The Court answered this question in the negative, holding that questions asked "to secure the `biographical data necessary to complete booking or pretrial services'" are exempt from Miranda. Id. at 601 (quoting United States v. Horton, 873 F.2d 180, 181 n. 2 (8th Cir.1989)). Several years later, citing Muniz, the Florida Supreme Court similarly held that routine booking questions do not require Miranda warnings "because they are not designed to lead to an incriminating response; rather, they are designed to lead to essential biographical data." Allred v. State, 622 So.2d 984, 987 (Fla.1993).[1]
Evidence at the suppression hearing established that the request for a contact number was put to Bucknor by the booking officer for the purpose of filling out the standard, computerized booking form. Indeed, according to the booking officer, she did not specify the type of number sought. Further, there was no evidence that, at the time Bucknor was booked, police had made any determination regarding to whom the cell phones belonged, i.e., the assailants, the victims, or some third party. Under these circumstances, we hold that the routine request for a contact number is of the same character as the questions involved in Muniz and Allred and thus similarly falls within the "booking exception." See United States v. Broadus, 7 F.3d 460, 464 (6th Cir.1993) (holding that asking for defendant's phone number as part of routine booking process fell within "routine booking question" exception to Miranda); United States v. McLaughlin, 777 F.2d 388, 391 (8th Cir.1985); United States v. Sims, 719 F.2d 375, 378 (11th Cir.1983).
The Sentence Imposed
At the sentencing hearing following Bucknor's conviction, the court and counsel addressed the sentences imposed upon Hudson and Morris. Hudson had entered an open guilty plea, cooperated with the State, and received a fifteen-year sentence with a ten-year mandatory minimum. Hudson did not qualify for habitual offender sentencing. Morris entered into a negotiated plea with the State and received a sentence of twenty-two years as a habitual felony offender, with a fifteen-year prison releasee reoffender mandatory minimum.
Despite the sentences imposed on Hudson and Morris, the State requested that Bucknor receive the maximum sentence  thirty years as a habitual felony offender. The trial judge imposed a thirty-year habitual felony offender sentence for the robbery charge and sentenced Bucknor to time served for the assault. In imposing sentence, the trial judge acknowledged the *1203 sentences imposed on Hudson and Morris. And, with respect to Morris specifically, the judge noted the sentence was the result of a negotiated plea and stated "the Court had not had the opportunity to hear testimony from the two victims in this case who were held by these three codefendants with guns pointed to their heads in the driveway of one of the victims' homes right after work in the afternoon, did not hear the testimony of the victims as to the fear, as to the feelings and emotions that they went through and they were exposed to and forced to be exposed by the defendants."
Bucknor insists his thirty-year habitual felony offender sentence is subject to reversal because (1) the sentence is vindictive as it is greater than the sentence to be imposed under a pre-trial plea deal offered him by the State and harsher than the sentences imposed upon Morris and Hudson; (2) in imposing sentence, the trial judge impermissibly relied upon conduct for which he had been acquitted; and (3) it was improper to rely upon the victims' fear in imposing sentence because, while the victims may have been fearful, they were "hardly paralyzed by fear."
We categorically reject Bucknor's claim of vindictive sentencing. First, nothing in the record before this court reflects the trial court was in any way involved with, or commented upon, the State's plea offer. The mere fact that the sentence imposed following trial was greater than that previously offered by the State as part of a plea is insufficient to establish vindictive sentencing. See Harris v. State, 845 So.2d 329, 330 (Fla. 2d DCA 2003). The sentences imposed upon Hudson and Morris also cannot be relied upon to demonstrate that Bucknor's sentence was vindictive. Hudson and Morris were not similarly situated. Hudson did not qualify for habitual felony offender sentencing and, according to the evidence, never got out of the car. As for Morris, although the evidence established that he and Bucknor were equally culpable, Morris entered into a negotiated plea with the State. See Kight v. State, 784 So.2d 396, 401 (Fla.2001) (recognizing claims of disparate sentencing have been rejected where codefendant's lesser sentence was result of "plea agreement or prosecutorial discretion"); Weathington v. State, 262 So.2d 724 (Fla. 3d DCA 1972) (rejecting defendant's claim that his 35-year sentence was disproportionate and unconstitutional where co-perpetrator received five-year sentence as result of negotiated plea). Bucknor's claim that reliance upon the victims' fear was somehow improper because the victims were not "that afraid" meets a similar fate as such claim is not substantiated by the record.
All that remains, then, is Bucknor's claim that he must be resentenced because, in explaining the sentence imposed, the trial court commented that it had not had the opportunity to hear the testimony of the victims "who were held by these three codefendants with guns pointed to their heads." Bucknor insists that, in making such a statement, the trial judge essentially indicated that Bucknor had pointed a gun at the victims and that reliance on such fact is improper as the jury acquitted him of the charged robbery with a firearm and, instead, convicted him only of the lesser included offense of robbery. Florida case law does indeed hold that a trial judge may not rely upon conduct for which the defendant has been acquitted in imposing sentence and that to do so is a violation of the defendant's due process rights.[2]See Cook v. State, 647 *1204 So.2d 1066 (Fla. 3d DCA 1994); see also Dowling v. State, 829 So.2d 368 (Fla. 4th DCA 2002); Evans v. State, 816 So.2d 742 (Fla. 4th DCA 2002). Having reviewed the trial judge's comments, we do not believe the trial court impermissibly relied upon conduct for which Bucknor had been acquitted. Nowhere did the judge state that Bucknor held a gun to the victims; rather, she observed only that, during this offense, the victims were held by the three men with guns pointed at the victims' heads and there was certainly evidence at trial that guns were involved in, and aggravated, the commission of the offense. Moreover, as a result of the same incident, appellant's codefendant, Hudson, pled guilty to robbery with a firearm and aggravated assault, as well as burglary with a firearm. Codefendant Morris pled guilty to robbery with a firearm, aggravated assault with a firearm and burglary with a firearm. We thus affirm the sentence imposed.
Affirmed.
SHAHOOD, C.J., and WARNER J., concur.
NOTES
[1] The routine booking questions identified in Allred concerned the defendant's name, address, height, weight, eye color, date of birth, and age. 622 So.2d at 987 n. 9.
[2] In this district, a claim that a sentence has been imposed in reliance upon such conduct is cognizable on appeal. See Doty v. State, 884 So.2d 547 (Fla. 4th DCA 2004) (on reh'g); Dowling v. State, 829 So.2d 368 (Fla. 4th DCA 2002); Howard v. State, 820 So.2d 337 (Fla. 4th DCA 2002); Evans v. State, 816 So.2d 742 (Fla. 4th DCA 2002); but see Reaves v. State, 655 So.2d 1189 (Fla. 3d DCA 1995).