Kuntz, J.
The defendant, Scott K. Tobiassen, appeals his judgment of conviction for first-degree murder and sentence of life in prison without the possibility of parole. Tobias-sen raises three issues on appeal and we affirm as to two of the issues without further comment. For the third issue, To-biassen argues that a question asked during the booking process relating to his employment violated his federal and state constitutional protections against compelled self-incrimination and, therefore, violated Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We reject his argument and hold that routine questions about .employment asked during the booking process do not violate a defendant’s rights under the federal and state constitutions. Therefore, we affirm Tobias-seris conviction and sentence.
I. Factual Background
On August 13, 2013, Tobiassen called his friend and told her that he needed to see her. When the friend arrived, Tobiassen showed her a mutual friend dead in the shower with multiple stab wounds to the neck and simultaneously admitted to having killed him. After the friend called the police, the police arrived and saw Tobias-sen carrying items out to his vehicle. They also found items on the front porch including power tools and a plastic bag with a sneaker protruding from it. After observing that the sneaker remained attached to a leg, the officers entered the residence and, in a bathroom, found a container with blood all over it, and blood splattered on the walls.
Later that night, a detective interviewed Tobiassen and, at the start of the interview, advised Tobiassen of his Miranda rights. In response to hearing his Miranda rights, Tobiassen said “things just got out of hand today,” and then invoked his right to remain silent. The detective immediately ended the interview upon hearing To-biassen invoke his right to remain silent.
Subsequently, a different officer was tasked with completing a “rough arrest form.” The officer was aware that Tobias-sen had invoked his right to remain silent and was instructed not to ask any questions beyond those seeking biographical information. At trial, the officer testified that he began on the top of the arrest form by asking about height, weight, eye color, *1047 and hair color. Tobiassen interrupted those questions and stated: “I hope my mom do[es] not find out about this, it will kill her.” The officer did not respond but continued asking the “rough arrest” questions. The next question asked for Tobiassen’s occupation and Tobiassen again interrupted. The officer testified that in response to the question asking for his occupation, To-biassen stated:
I’m a crane operator and I tried asking my roommate for help to pay my rent [because] I do not have a job anymore ... my roommate ... got angry and threw his skateboard at me that’s when I lost it .... I got angry at him—I got angry hit him because he would not help me with the rent because I do not have any other place to live and my life is over as I know it, and I hit him over the head with a metal pipe and killed him and the rest of the story you already know.
Tobiassen moved to suppress the statement recited above, arguing that he should not have been asked about his occupation after he invoked his right to remain silent. The trial court denied the motion and, after the jury convicted him of first-degree murder, this appeal followed.
II. Analysis
The issue presented by Tobiassen in this appeal is whether a question relating to occupation during the booking process falls within the “routine booking question” exception to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We join the majority of jurisdictions that have addressed this issue and conclude that a question relating to employment falls within the routine booking question exception to Miranda.
In Miranda, the United States Supreme Court established four now-familiar warnings that are required prior to interrogation when a person has been taken into custody. Specifically, “[a suspect] must be warned prior to any questioning [1] that he has the right to remain silent, [2] that anything he says can be used against him in a court of law, [3] that he has the right to the presence of an attorney, and [4] that if he cannot afford an attorney one will be appointed for him prior to any questioning if he. so desires.” Florida v. Powell, 559 U.S. 50, 59-60, 130 S.Ct. 1195, 175 L.Ed.2d 1009 (2010) (quoting Miranda, 384 U.S. at 479, 86 S.Ct. 1602).
The Supreme Court later explained that “the term ‘interrogation’ under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.” Rhode Island v. Innis, 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). Therefore, if a question is normally attendant to arrest and custody, it falls outside the protections recognized in Miranda. For example, “in the context of an arrest for driving while intoxicated, a police inquiry of whether the suspect will take a blood-alcohol test is not an interrogation within the meaning of Miranda” because the police action is one normally attendant to arrest and custody. South Dakota v. Neville, 459 U.S. 553, 564 n.15, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983). Nor does the government violate Miranda by requesting a defendant submit to fingerprinting or photography. Id.
Another area of inquiry that falls outside of Miranda derives from Pennsylvania v. Muniz, 496 U.S. 582, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990). At issue in Muniz were questions posed to a suspect arrested on suspicion of driving under the influen.ee. Relevant here, a plurality of the Muniz court held that responses to questions such as name, address, height, weight, eye col- or, age, and date of birth fell within a *1048 “routine booking question” exception to Miranda “which exempts from Miranda’s coverage questions to secure the biographical data necessary to complete booking or pretrial services.” Id. at 601, 110 S.Ct. 2638 (internal citation omitted). In reaching this conclusion, Muniz adopted a test that had previously gained widespread support in the federal circuits across the country. See United States v. Doe, 878 F.2d 1546 (1st Cir. 1989); United States v. Disla, 805 F.2d 1340 (9th Cir. 1986); United States v. McLaughlin, 777 F.2d 388 (8th Cir. 1985); United States v. Morrow, 731 F.2d 233 (4th Cir. 1984); United States v. Avery, 717 F.2d 1020 (6th Cir. 1983); United States v. Glen-Archila, 677 F.2d 809 (11th Cir. 1982); United States v. Prewitt, 553 F.2d 1082 (7th Cir. 1977); United States ex rel. Hines v. La Vallee, 521 F.2d 1109 (2d Cir. 1975); United States v. Menichino, 497 F.2d 935 (5th Cir. 1974); see also State v. Garcia, 233 Kan. 589, 664 P.2d 1343, 1356 (1983) (collecting state court cases and holding that “the information obtained from the appellant to complete the personal history sheet following his request for counsel did not violate his rights against self-incrimination and right to counsel under Miranda.”).
Our state supreme court recognized the routine booking question exception in Allred v. State, 622 So.2d 984 (Fla. 1993), holding “that routine booking questions do not require Miranda warnings because they are not designed to lead to an incriminating response; rather, they are designed to lead to essential biographical data.” Id. at 987; see also Holland v. State, 773 So.2d 1065, 1073 (Fla. 2000); Voorhees v. State, 699 So.2d 602, 612 n.8 (Fla. 1997).
We have applied this exception in a number of cases, see Bucknor v. State, 965 So.2d 1200, 1202 (Fla. 4th DCA 2007) (“[W]e hold that the routine request for a contact number is of the same character as the questions involved in Muniz and All-red and thus similarly falls within the booking exception.”); McDowell v. State, 903 So.2d 290, 292 (Fla. 4th DCA 2005) (recognizing the booking question exception but deeming it inapplicable to the issue before the court), and our sister courts have as well, see J.M. v. State, 34 So.3d 163, 164 (Fla. 3d DCA 2010) (“The Florida Supreme Court and the District Courts of Appeal in this state have routinely held that Miranda does not apply to questions designed to obtain basic booking information.”); State v. Foster, 562 So.2d 808, 809 (Fla. 5th DCA 1990) (“During the booking process, a suspect is asked approximately fifteen general questions which relate solely to identity. It is simply an administrative procedure. Unless there are unusual circumstances which do not appear from the record in this case, the routine gathering of biographical data for booking purposes cannot be characterized as an inherently coercive custodial interrogation.”). In fact, the booking question exception has been applied outside of the booking context as long as the officer is “acquiring basic information.” Timmons v. State, 961 So.2d 378, 380 (Fla. 4th DCA 2007); see also J.M., 34 So.3d at 165-66.
We are now asked to decide whether a question about employment falls within the routine booking question exception recognized in Muniz and Allred. While a question about employment was not addressed in Muniz or Allred, it has been addressed in other jurisdictions.
The Second Circuit addressed this question in United States v. Gotchis, 803 F.2d 74, 78 (2d Cir. 1986). In Gotchis, the Second Circuit discussed United States ex rel. Hines v. LaVallee, 521 F.2d 1109 (2d Cir. 1975), and explained that in Hines, the officer asked the suspect questions about his identity and background without realizing that the answers may be incriminating. Gotchis, 803 F.2d at 78-79 (citing *1049 Hines, 521 F.2d 1109). The suspect answered that he “had been married for eleven years and had two children,” and unbeknownst to the officer the victim later testified that “the rapist had told his victim during the assault that he had been married for eleven years and had two children.” Id. Notwithstanding that fact that the answer provided the link necessary to obtain the conviction, the Hines court had held it was admissible under Miranda. Id. After explaining Hines, the Second Circuit reached the same conclusion in Gotchis. The court stated that the question regarding employment “falls within the benign category of basic identifying data required for booking and arraignment.” Id. at 79. The fact that the answer may be incriminating in one instance, such as with Gotch-is, did not justify creating a bar to asking about employment which in most instances would be a useful booking question. See id.
The First Circuit addressed the issue in dicta in United States v. Duarte, 160 F.3d 80, 82 (1st Cir. 1998) (per curiam), and addressed it head on in United States v. Sanchez, 817 F.3d 38, 45 (1st Cir. 2016). The First Circuit explained that “the booking exception’s applicability turns on an ‘objective’ test that asks whether the questions and circumstances were such that the officer should have reasonably expected the questions to elicit an incriminating response.” Sanchez, 817 F.3d at 45. With regard to employment questions, the First Circuit agreed with the Second Circuit that “employment questions, ordinarily innocent of any investigative purpose, do not pose the dangers that Miranda sought to check—the answers to these questions give the judiciary important info (the info can help with setting a defendant’s bail, for example), and thus are so central to the booking and pretrial process that they are usually exempt from Miranda’s, coverage.” Id. (internal quotation omitted). In Sanchez, the defendant did not dispute that an employment question could fall outside of Miranda. Instead, he argued that in his specific situation, the question violated Miranda because it was knowingly asked to elicit an incriminating answer. Id. at 45-46. Not so, concluded the First Circuit. Id. (“As a nonmember of the team that investigated Sanchez, Toledo asked only routine questions to help with the booking process—not to strengthen the case against the arrestee.”). The Fourth Circuit reached the same result. United States v. Smith, 229 F.3d 1145, 2000 WL 1144602 (4th Cir. 2000) (unpublished table decision) (“[W]e find that the police’s questioning of Smith regarding his employment status was a part of routine booking questions and therefore did not violate Smith’s Fifth Amendment rights.”).
Tobiassen cites four other cases that addressed the issue while reaching different conclusions. See Hughes v. State, 346 Md. 80, 695 A.2d 132 (1997); Commonwealth v. Woods, 419 Mass. 366, 645 N.E.2d 1153 (1995); Commonwealth v. Guerrero, 32 Mass.App.Ct. 263, 588 N.E.2d 716 (1992); People v. Rodney, 85 N.Y.2d 289, 624 N.Y.S.2d 95, 648 N.E.2d 471 (1995). In Hughes, the Maryland Court of Appeals concluded that a question regarding routine “narcotics or drug use” did not fall within the exception. 695 A.2d at 141. However, the court “agree[d] that certain routine questions asked during the booking process are ordinarily exempt from the requirements of Miranda.” Id. at 139. In Guerrero, the first of the two cases from Massachusetts cited by Tobias-sen, the Appeals Court of Massachusetts commented in dicta that “[t]he relevance of occupation and employment to those responsibilities is less immediately obvious, and, in light of the Muniz decision, it will be preferable, unless Miranda warnings are repeated prior to booking, to scrub questions about employment status from the booking ritual.” 588 N.E.2d at 719. Later, after determining that the issue had *1050 been waived, in Woods the Supreme Judicial Court of Massachusetts decided that “in view of the significant public interest in protecting the Miranda rights of criminal defendants, we must express briefly our opinion on this issue” even though it was not relevant to the case before it. 645 N.E.2d at 1157. Although not an issue in the case, the Massachusetts court stated that “we believe that, where an arrestee’s employment status may prove incriminatory, the police must give Miranda warnings before asking questions about employment.” Id. In Rodney, the New York appellate court concluded that job-related questions fall outside the scope of Miranda’s protections. 624 N.Y.S.2d 95, 648 N.E.2d at 471. To the extent these cases cited by Tobiassen conclude that a question about employment during the booking process violates Miranda, we disagree.
In this case, the officer’s questions to Tobiassen were clearly biographical in nature and were appropriately part of the booking process. Therefore, the court properly denied his motion to suppress.
III. Conclusion
A question in a particular case that is appropriately part of a routine booking procedure falls outside of the protections outlined in Miranda. We hold that, in this case, one such appropriate booking question related to employment and the government did not violate Miranda by inquiring about the defendant’s employment during the booking process. Therefore, the trial court correctly denied Tobiassen’s motion to suppress his confession made in response to the booking officer’s question as to his employment.

Affirmed.

Levine and Klingensmith, JJ., concur.