# United States Court of Appeals
### For the Eighth Circuit

_____

No. 21-1299

_____

United States of America,

*Plaintiff - Appellee,*

v.

Terrell Jason Armstrong,

*Defendant - Appellant.*

_____

Appeal from United States District Court
for the District of North Dakota - Western

_____

Submitted: February 18, 2022
Filed: July 13, 2022

_____

Before LOKEN, COLLOTON, and SHEPHERD, Circuit Judges.

_____

COLLOTON, Circuit Judge.

A jury convicted Terrell Armstrong of a drug trafficking conspiracy charge. *See* 21 U.S.C. § § 841(a)(1), 846. The district court[1] sentenced him to 264 months' imprisonment. Armstrong asserts on appeal that the district court erred by admitting

---

[1]The Honorable Daniel L. Hovland, United States District Judge for the District of North Dakota.

certain evidence at trial, and that the court imposed an unreasonable sentence. We conclude that there was no reversible error, and therefore affirm the judgment.

I.

A grand jury charged Armstrong with conspiring to distribute controlled substances in North Dakota and Minnesota from "in or between 2017 to" June 2019. The evidence at trial showed that Armstrong agreed with others to distribute substantial quantities of methamphetamine and heroin in Bismarck and Mandan, North Dakota. According to testimony of several witnesses, Armstrong partnered with Danae Mansell in overseeing the drug business, transported contraband from Minnesota to North Dakota in furtherance of the operation, and supplied drugs directly or indirectly to several persons who redistributed them in the Bismarck-Mandan area. These persons included Agnes Reddogg and Gorgianna Hepperle, both of whom testified at trial. The government also presented evidence of a search at Armstrong's residence in Minnesota in April 2019, during which officers seized marijuana, a firearm, a money counter, and approximately $66,000 cash in a safe.

A jury found Armstrong guilty of the conspiracy charge. At sentencing, the district court varied downward from an advisory guideline range of 360 months to life imprisonment and sentenced Armstrong to a term of 264 months.

II.

Armstrong first challenges the district court's denial of his motion to suppress evidence. He sought to exclude a statement that he made to a detective during the search of his residence in 2019. While officers were executing the search warrant, but before they advised Armstrong of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), a detective asked Armstrong for his name, date of birth, phone number, home address, and place of employment. Armstrong responded to the employment

query by saying that he owned a dealership called Top Dog Auto. The investigator then informed Armstrong of his *Miranda* rights, and Armstrong elected to terminate the interview. The government later introduced Armstrong's statement at trial along with evidence that investigators could not locate a business under the name that Armstrong provided.

Armstrong moved to suppress his statement about employment, and the district court denied the motion. Citing *United States v. McLaughlin*, 777 F.2d 388 (8th Cir. 1985), the court observed that investigators are not required to administer *Miranda* warnings before asking a suspect about "basic identification information." *Id*. at 391-92. The court concluded that the investigator's question about Armstrong's employment fell "squarely within the exception" to the *Miranda* rule, and thus declined to exclude the statements. We review this legal conclusion *de novo*.

The familiar *Miranda* rule provides as a general matter that investigators must communicate warnings to a suspect before conducting a custodial interrogation. The government agrees that Armstrong was in custody at the time of the questioning, so the dispute concerns whether he was subject to interrogation. Interrogation includes "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980) (footnote omitted). As the district court observed, "a request for routine information necessary for basic identification purposes is not interrogation under *Miranda*." *McLaughlin*, 777 F.2d at 391. In other words, there is a "routine booking question" exception to *Miranda* for questions "to secure the biographical data necessary to complete booking or pretrial services," as long as the questions are asked "for record-keeping purposes only" and are not "designed to elicit incriminatory admissions." *Pennsylvania v. Muniz*, 496 U.S. 582, 601-02 & 602 n.14 (1990) (internal quotation omitted).

*McLaughlin* held that a question from a pretrial services officer to a drug trafficking defendant about his place of employment was a routine booking question that was excepted from the rule of *Miranda*. The court reasoned that employment was a factor properly considered in determining whether to release or detain a suspect pending trial, and that the officer could not have expected the inquiry to elicit an incriminating response. 777 F.2d at 392.

Armstrong relies on a caveat stated in *McLaughlin*: "Only if the government agent should reasonably be aware that the information sought, while merely for basic identification purposes in the usual case, is directly relevant to the substantive offense charged, will the questioning be subject to scrutiny." *Id.* at 391-92. He points out that investigators suspected him of drug trafficking, and that they found a large amount of cash in his residence. On that basis, Armstrong maintains that the inquiring officer reasonably should have been aware that an inquiry about employment was relevant to whether the money found in Armstrong's residence was derived from drug trafficking, and was therefore directly relevant to the substantive offense ultimately charged.

We are not convinced that the question about employment violated the *Miranda* rule. Employment is a standard element of a booking inquiry because a judicial officer is required by statute to consider "employment" in deciding whether to release or detain a defendant pending trial. 18 U.S.C. § 3142(g)(3)(A); *see McLaughlin*, 777 F.2d at 392. The judicial officer receives a report from a pretrial services officer, 18 U.S.C. § 3154(1), who may both question the defendant directly, as in *McLaughlin*, and collect information from arresting officers. *E.g.*, *United States v. Banks*, No. 21-cr-30032, 2021 WL 3739166, at *1 (C.D. Ill. Aug. 24, 2021); *United States v. Young*, No. 05-CV-90039-DT, 2006 WL 334456, at *1-2 (E.D. Mich. Feb. 13, 2006). The detective here inquired only where Armstrong was employed; if the officer knew then about the seizure of cash from Armstrong's safe (which is not clear from the record), he did not ask about the ownership or source of those funds.

Accepting Armstrong's argument likely would require the exclusion of routine employment information from booking questions in the entire category of drug trafficking cases. A reasonable investigator should be aware that virtually every drug trafficking investigation may involve an examination of the suspect's finances. Whether or not the suspect is found with a large amount of cash, investigators often explore whether a person suspected of drug trafficking has legitimate income to sustain his lifestyle. But employment status is not so central to a drug investigation that it must be excised from the routine biographical information that is collected in the course of arrest and booking. Like other appellate courts, we do not believe that *Miranda* requires an "employment" exception in drug trafficking cases: "[S]ince procurement of employment data would in most instances be as innocent and as useful for purposes of booking and arraignment as procurement of data about a suspect's marital status, we decline to create an exception forbidding routine questions about employment when the defendant is suspected of intent to distribute drugs." *United States v. Gotchis*, 803 F.2d 74, 79 (2d Cir. 1986); *accord United States v. Sanchez*, 817 F.3d 38, 45-46 (1st Cir. 2016); *Tobiassen v. State*, 213 So.3d 1045, 1049 (Fla. Dist. Ct. App. 2017). We therefore conclude that the district court properly denied Armstrong's motion to suppress.

## III.

Armstrong next contends that the district court erred in admitting certain evidence during trial. On his view, the disputed evidence concerned "other acts" of the defendant and should have been excluded as inadmissible character evidence under Federal Rule of Evidence 404(b).

The first challenge concerns an incident in 2018 when Armstrong, Mansell, and Hepperle visited an apartment in Bismarck that was occupied by rival heroin dealers. According to Hepperle, Armstrong visited the apartment to show "power" and "who ran things." When the occupants answered the door, Armstrong and Mansell "told

everybody to get on the ground." Hepperle also went to the ground and then heard "a bunch of screaming." After she ran out of the building, she heard gunshots.

Armstrong objected to this testimony, and the district court ruled that it was admissible. The court determined that it was "relevant background information to the establishment of this drug trafficking organization in the Bismarck-Mandan area." In particular, the court deemed the evidence "relevant to the establishment of a turf, . . . and steps that those involved in that organization may take to warn others who pose a threat." The court also analyzed the evidence under Federal Rule of Evidence 403 and concluded that the probative value was not substantially outweighed by any danger of unfair prejudice.

Armstrong contends that the disputed evidence was irrelevant to the charged conspiracy and should have been excluded as inadmissible character evidence. We conclude, however, that the district court properly deemed the evidence probative of the charged conspiracy. As the court explained, the evidence tended to show that Armstrong and Mansell acted to protect the "turf" of their drug trafficking organization and to "warn" potential competitors. That sort of activity is relevant to the crime charged and is not an ancillary act offered to prove the character of the defendant. Therefore, the district court did not abuse its discretion by admitting the evidence.

Armstrong also complains about testimony of Agnes Reddogg regarding a traffic stop in 2015. Reddogg testified that Hepperle introduced her to Armstrong in 2015, and that Armstrong then supplied her with small quantities of methamphetamine for both use and resale. Reddogg also explained that while she was driving in 2015 with Armstrong as a passenger, police stopped the vehicle and found hypodermic needles, methamphetamine, and marijuana in her possession. She testified that Armstrong had supplied the methamphetamine. According to Reddogg, she served two years in prison after the traffic stop, and then contacted Armstrong

when she was released in 2017. Armstrong resumed supplying Reddogg with methamphetamine for resale, and she gave the proceeds of her sales to Armstrong.

Armstrong did not object to Reddogg's testimony about the traffic stop, so we review only for plain error. *United States v. Olano*, 507 U.S. 725, 731-32 (1993). To obtain relief under that standard, a defendant must show an obvious error that prejudiced the defense and seriously undermines the fairness, integrity, or public reputation of judicial proceedings. *Id*. at 732-35. Armstrong again suggests that the disputed evidence was not relevant to the charged conspiracy, and should have been excluded as inadmissible character evidence.

The district court did not commit an obvious error by allowing the testimony. If Armstrong had objected, then the court might have ruled it admissible on at least two possible grounds. First, evidence that Armstrong supplied Reddogg with drugs in 2015 was not plainly irrelevant to proving the existence and development of a later conspiracy between 2017 and 2019 during which Armstrong again supplied methamphetamine to Reddogg. *United States v. Leisure*, 377 F.3d 910, 914 (8th Cir. 2004), *vacated on other grounds*, 543 U.S. 1112, *reinstated in relevant part*, 412 F.3d 857, 859 (8th Cir. 2005) (per curiam); *United States v. Summers*, 137 F.3d 597, 602 (8th Cir. 1998). Second, the court would not have plainly erred by admitting evidence of the 2015 traffic stop under Rule 404(b) to prove Armstrong's knowledge and intent to commit the charged offense of conspiracy to distribute drugs. *United States v. Davis*, 867 F.3d 1021, 1029 (8th Cir. 2017). Therefore, Armstrong has not established a plain error warranting relief.

IV.

Armstrong also challenges the reasonableness of his sentence. He argues that the sentence of 264 months' imprisonment is significantly greater than his co-defendant Mansell's sentence of 180 months. He contends that the district court

failed to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *See* 18 U.S.C. § 3553(a)(6).

The statutory directive in § 3553(a)(6) to avoid sentencing disparities refers to national disparities, not to differences between co-conspirators, so Armstrong's argument founders on a mistaken premise. *United States v. Pierre*, 870 F.3d 845, 850 (8th Cir. 2017). In any event, Armstrong and Mansell were not similarly situated. The court found that Armstrong was accountable for a greater quantity of drugs, and Mansell accepted responsibility by pleading guilty. *See United States v. Baez*, 983 F.3d 1029, 1044 (8th Cir. 2020); *United States v. Carr*, 895 F.3d 1083, 1091 (8th Cir. 2018). In sentencing Armstrong, moreover, the district court varied downward by eight years from the bottom of the advisory range, and the court did not abuse its discretion by declining to vary downward even further.

\*     \*     \*

The judgment of the district court is affirmed.

_____